# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

PAUL D. CARTY,          )
                                )
           Plaintiff,       )
                                )   Civil Action No.  3:08-cv-00507-MR-DCK
       v.                )
                                )
WESTPORT HOMES OF NORTH   )
CAROLINA, INC., WPNC          )
DEVELOPMENT, LLC, JOHN B.    )
SCHEUMANN, STEVEN M. DUNN, and  )
CHARLES D. SCHEUMANN,     )
                                )
          Defendants.     )

## DEFENDANTS WESTPORT HOMES OF NORTH CAROLINA, INC. AND WPNC DEVELOPMENT, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Westport Homes of North Carolina, Inc. ("Westport") and WPNC Development, LLC ("WPNC") (collectively, the "Companies"), respectfully request that the Court dismiss the claims Plaintiff Paul Carty ("Carty") has asserted against them in his Amended Complaint.  While Carty's Amended Complaint (which was filed in response to Defendants' original Motion to Dismiss) cures certain deficiencies contained in the original Complaint (e.g., voluntarily dismissing Carty's civil conspiracy claim against all defendants and his constructive fraud claim against the Companies), the other amendments are superficial in nature and fail to cure any of the issues that are fatal to Carty's remaining claims.  It simply is not enough for Carty to assert conclusory allegations without any factual support or to sporadically interject a conclusory legal term in hopes of surviving the Defendants' Motion to Dismiss.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).  For all

of the reasons set forth below, Carty's claims against the Companies (whether amended or not) should be dismissed.

## INTRODUCTION

In September, 2004, Carty and Defendants John Scheumann, Steven Dunn, and Charles Scheumann (collectively, "the Individual Defendants") established Westport and WPNC. As expressly set forth in the Operating Agreement for WPNC (the "WPNC Operating Agreement," Pl.'s Am. Compl., Ex. B), any combination of members holding an eighty percent supermajority in WPNC had the right to terminate any member's interest in WPNC and repurchase those interests. Similarly, as expressly set forth in the Shareholders Agreement for Westport (the "Westport Shareholders Agreement," Pl.'s Am. Compl., Ex. A), the shareholders had the right to repurchase the shares of any individual that ceased to be a member of WPNC.

The terms under which the membership interests in WPNC and the shares in Westport are to be repurchased also are expressly set forth in the WPNC Operating Agreement and the Westport Shareholders Agreement. These agreements state that the Companies had the option of paying twenty percent of the value of the membership interests and shares in cash, and eighty percent of the purchase price with a promissory note that would make payment "subordinated to all debts and liabilities that are owed by the [Companies] to a third party." (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 3.03; Ex. B, WPNC Operating Agreement, § 9.09).

The Companies terminated their association with Carty on December 14, 2006 by vote of the requisite supermajority of the Companies' other owners. Upon the termination of Carty's association with WPNC and Westport, the Companies paid Carty twenty percent of the value of his interests in WPNC and twenty percent of the value of his shares in Westport, and provided Carty with Promissory Notes for the balance – all as expressly set forth in the WPNC Operating Agreement and the Westport Shareholders Agreement. As the parties had agreed in 2004 when

the Companies were created, the Promissory Notes were subordinated to the prior debts owed by Westport and WPNC.

Although Carty has asserted a number of legal theories in his Amended Complaint, his allegations boil down to one issue – Carty's frustration that the condition precedent to payment of the Promissory Notes has not yet occurred, and his debts are still subordinated to the obligations Westport and WPNC owe to others. As frustrating as this may be to Carty, he expressly agreed to these conditions, both upon becoming a member and shareholder, and upon termination of his relationship with the Companies. Carty has received a good deal for his investment. That he is not satisfied with the deal (which he agreed to twice) does not state an actionable claim against the defendants. His attempt to extort an even better deal than the parties negotiated must be rejected and, pursuant to Rule 12(b)(6), all of his claims must be dismissed for failure to state a claim upon which relief may be granted.

## **STANDARD OF REVIEW**

A motion to dismiss tests the sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court has recently instructed, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). *See also Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint" do not support the legal conclusion). A plaintiff must instead plead "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atl. Corp.*, 127 S. Ct. at 1974. Where, as here, the plaintiff has failed to provide sufficient facts demonstrating that relief is plausible, dismissal is appropriate. *Giarratano*, 521 F.3d at 304.

When ruling on a motion to dismiss, the Court may consider documents that are the subject of a complaint and specifically referred to by that complaint. *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Fayetteville Investors v. Commercial Builders, Inc*., 936 F. 2d 1462, 1465 (4th Cir. 1991). A plaintiff's complaint may be dismissed if shown to be invalid by the documents upon which it is based. *Standard Life & Accident Ins. Co. v. Dewberry & Davis, LLC,* 210 Fed. Appx. 330, 332-33 (4th Cir. 2006) (affirming dismissal of breach of contract claim where exhibits attached to complaint belied any legal claims therein).

When held to these well-established standards, Carty's Amendment Complaint clearly fails to assert any claim against the Companies upon which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

In September 2004, Carty and the Individual Defendants entered into agreements establishing two companies, Westport and WPNC, both of which also are defendants in this action. (Pl.'s Am. Compl., ¶¶ 10-11; Ex. A, Westport Shareholders Agreement; Ex. B, WPNC Operating Agreement).[1] Pursuant to the WPNC Operating Agreement and the Westport Shareholders Agreement, John Scheumann (based on a $300,000 investment) owned fifty percent; Steve Dunn (based on a $120,000 investment) owned twenty percent; Carty (based on a $90,000 investment) owned fifteen percent; and Charles Scheumann (based on a $90,000 investment) owned fifteen percent, of each company. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement; Ex. B, WPNC Operating Agreement). Carty, moreover, was appointed

---

[1]As a preliminary matter, the agreements establishing these Companies, as well as the Termination Agreement and the Promissory Notes discussed below, explicitly provide that the law of Indiana would govern their terms and the parties' rights/obligations pursuant thereto. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 6.12; Ex. B, WPNC Operating Agreement, § 13.02).

the manager of WPNC at some later point (Pl.'s Am. Compl. ¶13), and was employed as an officer of the Companies. (Pl's. Compl., Ex. J, Termination Agreement). From the outset of these relationships, Carty and the Individual Defendants recognized that their contributions might not be sufficient to operate the Companies. They acknowledged that they might seek as much as $3,000,000.00 in loans from John Scheumann, which would be paid over a three year period with an interest rate of eight percent. (Pl.'s Am. Compl., Ex. B., WPNC Operating Agreement, §3.04).

These agreements, which were and are binding on all of the individuals involved in this lawsuit, authorized any combination of the members holding an eighty percent supermajority in WPNC to remove a manager, with or without cause, and further authorized both Companies to purchase an individual's ownership shares if that individual ceased to be an employee. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 2.02; Ex. B, WPNC Operating Agreement §§ 6.05 and 9.3). In the event of such a purchase, the Companies were required to provide written notification to the individual, and the purchase price was to be calculated based on the book value of the Companies at the end of the month immediately preceding the termination. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, §§ 3.01-3.02; Ex. B, WPNC Operating Agreement, §§ 9.07-9.08). The agreements, moreover, explicitly stated that the Companies had the right and the option to defer payment of eighty percent of the purchase price with a promissory note that would make payment "subordinated to all debts and liabilities that are owed by the [Companies] to a third party." (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 3.03; Ex. B, WPNC Operating Agreement, § 9.09).

Pursuant to these agreements (effective since September, 2004), the Individual Defendants executed several documents on December 14, 2006, removing Carty as a

Management Shareholder of Westport and as a manager and member of WPNC. (Pl.'s Am. Compl., Exs. C, D, F, G).

Following discussions between the parties regarding the termination and buyout, the Companies sent written notification to Carty on December 21, 2006, indicating that he was being removed as manager of WPNC, and that the Companies were exercising their options to purchase his ownership interests in both Companies, as required and permitted by the Westport Shareholders Agreement and the WPNC Operating Agreement. (Pl.'s Am. Compl., Ex. I, Notice of Buyout and Release). Although the Companies were prepared to complete the transactions by the end of December, the parties agreed (at Carty's request) to close on January 2, 2007. (Pl.'s Am. Compl., Ex. I, Notice of Buyout and Release). The parties further agreed that the purchase price would be based on the net book value of the Companies at the end November 2006. The net book value of Carty's interests in the Companies totaled $768,516 for Westport and $187,827 for WPNC. (Pl.'s Am. Compl., Ex. I, Notice of Buyout and Release).

The parties also confirmed that the purchase price would be paid pursuant to the Westport and WPNC Agreements, whereby Carty would receive twenty percent in cash on the date of closing and the rest would be paid pursuant to the Companies' Promissory Notes. (Pl.'s Am. Compl., Ex. I, Notice of Buyout and Release, ¶ 3). Carty re-confirmed these terms and indicated his consent as set forth in the Notice of Buyout and Release. (Pl.'s Am. Compl., Ex. I, Notice of Buyout and Release).

On January 2, 2007, Carty and the Companies executed a Termination Agreement, terminating his employment as an officer of the Companies. (Pl.'s Am. Compl., Ex. J, Termination Agreement). As set forth in the Termination Agreement, the Companies paid Carty $75,000 and Carty "release[d], and waive[d] any and all claims, actions, causes, of actions, or

demands against the Companies."  (Pl.'s Am. Compl., Ex. J, Termination Agreement).  Also on January 2, 2007, the Companies issued Promissory Notes to Carty, indicating that the Companies would pay him the balance ($614,812 for Westport and $150,261 for WPNC) pursuant to the agreed-upon terms.  (Pl.'s Am. Compl., Exs. K-L).  Carty promptly executed these Notes, reaffirming that he "acknowledged and agreed to" their terms.  (Pl.'s Am. Compl., Exs. K-L).  Among those terms was a promise to pay Carty within one year, provided all of the other conditions were met.  (Pl.'s Am. Compl., Exs. K-L).  One such condition was the Notes' subordination provision, which was consistent with the requirements of the Westport Shareholders Agreement and the WPNC Operating Agreement, and which indicated that the Notes would be subordinated in right of payment to the Companies' other debt.  (Pl.'s Am. Compl., Exs. K-L).

The Notes further provided that "Interest [on the Note] shall be payable quarterly in arrears with interest payments due on or before the fifteenth (15th) of the last month of each calendar quarter."  (Pls. Compl., Exs. K-L).  Carty does not allege (nor could he) that the Companies have failed to pay these quarterly interest payments or that he has not accepted such payments.[2]

The Companies purchased Carty's ownership interests on January 2, 2007.  Carty, therefore, remained a record owner of the Companies until that time.  Accordingly, the Companies issued Carty, and filed with the IRS, the required K-1 Schedules reflecting his pro rata allocation of the Companies' income, deductions, credits, etc., resulting from their operations through the date on which the Companies purchased his ownership interests.  (Pl.'s

_____

[2]Carty also fails to mention that he was removed from a personal guaranty on behalf of the Companies and that, as a creditor, he is in a better financial position than the equity holders.

Am. Compl., ¶¶ 28, 29, and 41). While the Companies' book value on November 30, 2006 was used to calculate the purchase price of Carty's ownership interests, the sale of Carty's interests did not occur (and, thus, was not effective) until January 2, 2007 – at Carty's request. (Pl.'s Am. Compl., Exs. C-L).

The Companies are currently not obligated to pay Carty the principal amount due under the Notes pursuant to the express terms of the Notes because the Companies have not yet been able to pay their other outstanding debts. (Pl.'s Am. Compl., ¶ 34). The Companies, therefore, have not yet paid Carty for the outstanding principal amount of the Notes. (Pl.'s Am. Compl., ¶ 34).

## ARGUMENT

## I. CARTY'S BREACH OF CONTRACT CLAIMS (COUNTS ONE AND TWO) SHOULD BE DISMISSED BECAUSE THERE HAS BEEN NO BREACH.

The Promissory Notes at issue are governed by Indiana law. (Pl.'s Am. Compl., Exs. K-L). Under Indiana law, "[t]he essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655 (Ind. Ct. App. 2004). "The construction of a written contract is a question of law." *First Nat'l Bank & Trust v. Indianapolis Public Housing Agency*, 864 N.E.2d 340, 350 (Ind. Ct. App. 2007) (citing *Boonville Convalescent Center, Inc. v. Cloverleaf Healthcare Services, Inc.*, 834 N.E.2d 1116, 1121 (Ind. Ct. App. 2005)). Motions to dismiss, therefore, are an appropriate mechanism for courts to resolve breach of contract claims. *Id.* Furthermore, where a contract contains a condition precedent, Rule 9(c) of the Federal Rules of Civil Procedure requires that the party demanding performance must allege that all such

---

He, therefore, has received everything he originally bargained for *and* has minimized his financial risk with respect to the Companies.

conditions to performance have been met.  *See Patterson v. State Farm Mutual Automobile Ins. Co.*, No. 1:05-CV-1782-DFH-TAB, 2006 WL 1877002, at *3 (S.D. Ind. July 6, 2006) (dismissing complaint for failing to allege condition precedent had been met).

Carty does not allege that the Companies have breached a contractual obligation, nor does he allege that the conditions precedent to performance have been met.  (Pl.'s Am. Compl., ¶¶ 43-58).  Rather, Carty insists that the Court disregard clear and explicit terms of the contracts. (Pl.'s Am. Compl., ¶¶ 47 and 54).  Specifically, Carty asks the Court to invalidate an explicit provision that subordinates his right to payment to those of the Companies' other creditors.  *Id*. Carty's request, however, does not constitute a breach of contract claim in Indiana.  The Indiana Court of Appeals recently granted a motion to dismiss the plaintiff's breach of contract claim where it was clear from the four corners of the document that no obligations had been breached. *First Nat'l Bank & Trust v. Indianapolis Public Housing Agency*, 864 N.E.2d 340, 350 (Ind. Ct. App. 2007).  In doing so, the Court of Appeals stated that:

> The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts.  When the language of a contract is clear and unambiguous, the intent of the parties is to be determined from the four corners of the instrument.  In such a situation, the terms are conclusive and [Indiana courts] will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions.

*Id*.  Carty must, but did not and could not, allege that the Companies have breached a contractual obligation.  Instead, he asks the Court to invalidate part of the contract and thereby create an obligation upon the Companies that has never previously existed.

Furthermore, there is nothing ambiguous about the contractual provision about which Carty now complains.  It is clearly titled "SUBORDINATION," and it explicitly states that:

> [T]he payment of the principal of and interest on this Note shall be subordinated in right of payment, to the extent and in the manner hereinafter set forth, to the prior payment in full of all debt,

9

> including debt owed to John B. Scheumann (the "Scheumann Note"). [Carty] agrees not to exercise any rights hereunder until the Scheumann Note is paid in full.

(Pl.'s Am. Compl., Exs. K-L). This provision simply reiterates what all of the individuals involved agreed to several years earlier. Specifically, both the Westport Shareholders Agreement and the WPNC Operating Agreement (executed in September 2004) provide that the company has the option to purchase the shares of an individual owner pursuant to a promissory note that makes such payment "subordinated to all debts and liabilities that are owed by the [Companies] to a third party." (Pl.'s Am. Compl., Ex. A, Westport Agreement, § 3.03; Ex. B, WPNC Agreement, § 9.09). Importantly, Carty does not allege that either of those agreements was procured by fraud or that they contain unenforceable terms.[3]

The applicable provision of the Promissory Note at issue is neither ambiguous nor unconscionable. All of the individuals involved (including Carty) agreed when they purchased shares in the Companies that any re-purchase by the Companies would be pursuant to these terms. These terms, moreover, were explicitly reiterated in the Promissory Notes to which Carty agreed. Carty's newfound dissatisfaction with these terms is not a sufficient or proper basis to support a breach of contract claim under Indiana law. Indeed, such an attempt was recently and squarely rejected on the basis that the defendant was "completely within its contractual rights" to undertake the conduct at issue and, thus, "it was not violating other legal duties in doing so."

---

[3]In his Amended Complaint, Carty also makes the curious allegation that his breach of contract claims concerning the Promissory Notes have merit because the "Payment and Release" clause of the Termination Agreement is unenforceable. Pl.'s Am. Compl. ¶¶ 46-47, 54-55. Carty's new allegations concerning the enforceability of certain provisions in the *Termination Agreement*, however, have absolutely nothing to do with his claims that the Companies breached the obligations imposed upon them by the *Promissory Notes*. Regardless of Carty's allegations dealing with the Termination Agreement, the fact remains that the Companies have met all of their obligations pursuant to the Promissory Notes, which contain the very same Subordination provision to which Carty had agreed years earlier.

*MFP Eagle Highlands, LLC v. Am. Health Network of Indiana, LLC*, 2009 U.S. Dist. LEXIS 1915, *16-20 (S.D. Ind. Jan. 9, 2009). Simply put, Carty has not pleaded that the Companies have breached any obligations imposed upon them by the Notes.

II.    **CARTY'S REMAINING CLAIMS AGAINST THE COMPANIES SHOULD BE DISMISSED BECAUSE HE HAS RELEASED THE COMPANIES FROM SUCH CLAIMS AND, IN ANY EVENT, EACH ONE IS FATALLY FLAWED.**

A.    **Carty Has Executed a Release Prohibiting These Claims**.

As alleged in the Amended Complaint, on January 2, 2007, Carty and the Companies executed a Termination Agreement. (Pl.'s Am. Compl., Ex. J, Termination Agreement). Pursuant to the Termination Agreement, Carty agreed to, *inter alia*, "release, and waive any and all claims, actions, causes of action or demands against the Companies." (Pl.'s Am. Compl., Ex. J, Termination Agreement, § 2). In exchange for that release and waiver, among other things, the Companies paid Carty $75,000. Carty can not now assert claims against the Companies that he has already released.

"A release is a surrender of a claimant's right to prosecute a cause of action." *Wright Motors v. Marathon Oil Co.*, 631 N.E.2d 923, 925 (Ind. Ct. App. 1994). Courts in Indiana construe a release, like any other contract, "to carry out the intent of the parties to the release. That intent is disclosed by the language the parties used to express their rights and duties considered in light of all the facts and circumstances." *Id.* (internal citations omitted).

On January 2, 2007, Carty unequivocally released and waived any claim he may have against the Companies. Nevertheless, Carty wholly ignores this release and now purports to assert several claims against the Companies based upon alleged acts that took place on or before the date of the Termination Agreement. Specifically, Carty alleges in Counts III, VI, and VIII, that the Companies engaged in various acts, or undertook various obligations, leading up to and including the execution of the Termination Agreements that give rise to Carty's claims. To the

extent that any such claims exist, they have been released and waived. They, therefore, must be dismissed.

Moreover, Carty's allegation in the Amended Complaint that the "Payment and Release" provision should not be enforced because he was coerced into entering into the Termination Agreement and the Promissory Notes does nothing to save his claims. (*See* Pl.'s Am. Compl. ¶¶ 25, 46 and 54). Tellingly, Carty does not offer to return the $75,000 he was paid pursuant to that provision (or any of the interest payments that he has received); rather, he alleges that only the portion that disfavors him should be disregarded. It is well-established, however, that "[a] party may not claim benefits under a transaction or instrument and, at the same time, repudiate its obligations." *Raymundo v. Hammond Clinic Asso.*, 449 N.E.2d 276, 283 (Ind. 1983) (citing *Caito v. Indianapolis Produce Terminal, Inc.*, 320 N.E.2d 821, 825 (Ind. Ct. App. 1974)). Indeed, the very case relied upon by Carty explicitly states that "a party wishing to avoid the effect of his release must restore the status quo by restoring or tendering the consideration received by him. Full restoration of the consideration received for a release is a condition precedent to the maintenance of an action for the rescission of a contract or the avoidance of the bar raised by the pleading of the release." *Prall v. Indiana Nat'l Bank*, 627 N.E.2d 1374, 1379 (Ind. Ct. App. 1994) (internal citations omitted). Simply put, Carty cannot keep the consideration paid for a promise that he insists need not be kept. Even if he returned such consideration, moreover, Carty fails to allege the elements of fraud necessary to vitiate the release, as set forth in the *Prall* decision relied upon by Carty. *Compare Prall*, 627 N.E.2d at 1379 (stating that elements of fraud to vitiate release include a material representation of fact

known to be false that is relied upon and that causes injury) *with* Pl.'s Am. Compl. ¶ 25 (alleging

coercion but no misrepresentation or reliance).[4]

Moreover, as discussed in Section II.B.3 below, Plaintiff's claim of economic duress must

fail because Defendants acted within their contractual rights in removing Plaintiff and because he

had an adequate remedy at law.

**B.** **Even If Not Released, Each of Carty's Remaining Claims Are Fundamentally Flawed.**

**1.** **Carty has Failed to State a Claim for Unjust Enrichment (Count III) Upon Which Relief May Be Granted.**

**a.** **Carty's Unjust Enrichment Claim is Barred by the Parties' Express Agreements.**

Carty's unjust enrichment claim also should be dismissed because the parties'

relationship was governed by express contracts.[5]  It is a well-settled principle of law that an

"unjust enrichment claim is available only in the absence of an express contract between the

parties." *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Limited*, 72 Fed. Appx. 916,

920 (4th Cir. 2003); *see also Bright v. QSP, Inc.*, 20 F.3d 1300, 1307 (4th Cir. 1994) ("an

express contract and an implied contract, relating to the same subject matter can not co-exist");

*Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988) ("If there is a contract between the parties the

contract governs the claim and the law will not imply a contract.").

Here, the calculation of Carty's ownership interests were defined by the Westport

Shareholders Agreement (Pl.'s Am. Compl., Ex. A) and the WPNC Operating Agreement (Pl.'s

---

[4]Indeed, as described in the Individual Defendants' Motion to Dismiss the Amended Complaint, (even if Carty returned the money he was paid and alleged the elements of fraud), there can be no fraud where Carty received everything he originally bargained for when the Companies were formed.

[5]In fact, Carty's breach of contract claims rest upon allegations that the agreements between the parties are enforceable.

Am. Compl., Ex. B).  Pursuant to those Agreements, the Termination Agreement (Pl.'s Am. Compl., Ex. J), and *Carty's own request*, Carty's ownership interest in the Companies remained unchanged until January 2, 2007.  The parties expressly agreed to Carty's ownership interests in their respective agreements.  Carty may not now request that the Court impose an implied contract that contradicts the parties' express agreements.  Accordingly, Carty's claims for unjust enrichment should be dismissed.

> **b.**     **Carty's Unjust Enrichment Claim Fails to Allege All Requisite Elements.**

In addition, even if the Court were to find that the subject matter of Carty's ownership interest in the Companies, is not covered by the express contracts between the parties, Carty's unjust enrichment claim should still be dismissed because Carty has failed to allege the necessary elements of such a claim.

To properly state a claim for unjust enrichment, a plaintiff must allege that (1) it conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit.  *Metric*, 72 Fed. Appx. at 920 (citing *Booe,* 369 S.E.2d at 556).  A fundamental requirement of an unjust enrichment claim is that the "plaintiff seeking recovery for unjust enrichment must have conferred a benefit on the other party."  *Metric Constructors, Inc.*, 72 Fed. Appx. at 920 (internal quotation omitted).  Yet, here, Carty has not made any allegation that he did anything to confer a benefit on Defendants.  The basis of Carty's unjust enrichment claim is that Carty received K-1 Schedules from both Westport and WPNC for the years 2006 and 2007, which allegedly overstated and exaggerated income earned by Carty. (Pl.'s Am. Compl. ¶¶ 28-29, 31, 41, 60). Yet, as alleged by Carty, a K-1 "assign[s] a reported corporate income" to each individual owner. (Pl.'s Am. Compl. ¶ 28)  Carty does not allege that he paid tax liability owed by any defendant.

Even if Carty had alleged that he paid tax liability owed by a Defendant, Carty fails to allege how the Companies benefited. Tax payments made by Carty do not lessen the tax liabilities owed by the Companies. As a result, Carty fails to state an unjust enrichment claim upon which relief can be granted and, therefore, Count III should be dismissed pursuant to Rule 12(b)(6).

        **2.**        <u>**Carty's Unfair and Deceptive Trade Practices Claim (Count VI) Should Be Dismissed Because Carty's Allegations Do Not Affect Commerce, and a UDTPA Claim Cannot Be Based on Breach of Contract.**</u>

        **a.**        <u>**Carty's Allegations Are Not "In or Affecting Commerce."**</u>

Carty's Unfair and Deceptive Trade Practices Act (UDTPA) claim must fail because the alleged conduct is not sufficiently "in or affecting commerce." The UDTPA declares unlawful "unfair or deceptive acts or practices in or affecting commerce . . . ." N.C. GEN. STAT. § 75-1.1(a). "The elements of a claim for unfair or deceptive trade practices . . . are (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or to his business." *RD & J Props. v. Lauralea-Dilton Enter., LLC*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (N.C. Ct. App. 2004). "Although commerce is defined broadly under G.S. § 75-1.1(b) . . . the fundamental purpose of G.S. § 75-1.1(b) is to protect the consuming public." *Durling v. King,* 146 N.C. App. 483, 488, 554 S.E.2d 1, 4 (2001) (internal citations omitted); *see also Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 165 (4th Cir. 1985) (stating that the apparent purpose of the act is to protect the consuming public). To "affect commerce," a defendant's allegedly deceptive acts must have a tangible effect on the marketplace. *See Esposito,* 181 N.C. App. at 746.

Carty's UDTPA claim is not in or affecting commerce because Carty's allegations relate to areas that have all been carved out of the UDTPA's definition of "commerce." As a general

rule, there is a presumption against unfair and deceptive trade practice claims as between employers and employees, directors, and officers. *Dalton v. Camp,* 353 N.C. 647, 658, 548 S.E.2d 704, 711 (2001); *see also Anderson v. Brokers, Inc. (In re Brokers)*, 396 B.R. 146, 162-63 (Bankr. M.D.N.C. Oct. 17, 2008) (finding that the actions of a director and officer of a development company "are comparable to those between an employer and an employee that do not affect commerce beyond the employment relationship.").

In addition, "matters of internal corporate management, such as the manner of selection and qualifications for directors, do not affect commerce as defined by Chapter 75 and [the North Carolina] Supreme Court." *Wilson v. Blue Ridge Elec. Membership Corp.,* 157 N.C. App. 355, 357-58, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003) (affirming dismissal where company's by-laws were amended to prevent plaintiff from serving on the board). Similarly, securities transactions are not covered by the UDTPA. *Lindner,* 761 F.2d at 167 (affirming dismissal and distinguishing securities transactions by stating that other situations where UDTPA is applicable showed defendants' anti-competitive conduct injuring consuming public, whereas in this case, minority shareholders were allegedly deprived fair market value for stock due to merger).

Here, Carty's UDTPA claim appears to be based upon: (1) the termination of his employment with the Companies; (2) the internal corporate governance decisions of the other members and shareholders to remove him from his positions as an officer, director and manager of the Companies; and/or (3) the repurchase of his interests in the Companies. Apart from conclusory allegations, which relate to these three proscribed subjects, Carty has pled no facts evidencing any affect on commerce. Since all of Carty's allegations have been specifically excluded from UDTPA protection, Carty's UDTPA claim should be dismissed.

Carty's new and conclusory allegation in his Amended Complaint that the Companies' conduct affects commerce is insufficient to withstand this Motion to Dismiss. *See* Pl.'s Am. Compl. ¶ 82. A claim requires more than conclusory allegations without any facts supported alleged in support thereof. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). The facts actually alleged in Carty's Amended Complaint, moreover, squarely contradict his conclusion that the Companies' conduct affected commerce. Despite his unilateral proclamation, the facts as plead and the cases cited above demonstrate that Carty's UDTPA claim must fail. Indeed, cases cited herein support the Companies' argument that UDTPA claims arising from conduct that, on the face of the complaint, does not affect commerce should be dismissed pursuant to Rule 12(b)(6). *See, e.g.*, *Wilson v. Blue Ridge Elec. Membership Corp.,* 157 N.C. App. 355, 357-58, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003).

> **b.**     <u>Carty's UDTPA Claim Must Also Fail Because It Relies on a Mere Breach of Contract as Its Predicate.</u>

Even if Carty's allegations can be construed as "in or affecting commerce," and somehow fall outside of the subject matters precluded under the Act, Carty's UDTPA claim should be dismissed because such claims cannot, as here, be based on a breach of contract claim. "It is well established that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action [under the UDTPA]." *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.,* 124 N.C. App. 383, 390, 477 S.E.2d 262, 266 (N.C. Ct. App. 1996). Instead, a plaintiff is required to allege and prove that "substantial aggravating circumstances" attended the breach. *Id.* The determination of whether an act or practice is an unfair or deceptive practice is a question of law for the Court. *See Tar Heel Indus. Inc. v. E.I. DuPont de Nemours & Co., Inc.*, 91 N.C. App. 51, 57, 370 S.E.2d 449, 452 (N.C. Ct. App. 1988). Here,

Carty's UDTPA claim arises out of his alleged rights under the Shareholder Agreement, Operating Agreement, Notice of Buyout and Release, Termination Agreement and Promissory Notes. Carty's UDTPA claim relies upon allegations that mirror those that allegedly constitute breach of the parties' contracts. Not only should Carty's breach of contract claims be dismissed, he also has failed to allege any aggravating circumstances accompanying such alleged breaches. As a result, Carty's UDTPA claim also should be dismissed.

> ### 3. Carty's Economic Duress Claim (Count VIII) Should Be Dismissed Because the Allegations Defeat a Claim for Duress and Do Not Assert a Recognized Cause of Action Under North Carolina or Indiana Law.
>
> #### a. Carty Has Not Asserted a Recognized Cause of Action Under North Carolina or Indiana Law.

As a threshold matter, Carty's economic duress claim must fail because it does not assert a recognized cause of action. Economic duress is a defense used by parties to repudiate an agreement which resulted from the duress. *See, e.g., Bob McClemore & Co. Inc. v. Branch Banking & Trust Co. In re Maco Homes*, 96 F.3d 1439, 1996 WL 511494, at *4 (4th Cir. Sep. 10, 1996); *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 490, 219 S.E.2d 190, 194 (N.C. 1975). *See also Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 282-83 (Ind. 1983). Economic duress is not, as Carty alleges, an affirmative cause of action upon which Carty can recover actual damages and punitive damages from the Individual Defendants. No North Carolina case has permitted this, and Carty's attempt should not be permitted here.[6]

---

[6]Carty's new allegation in his Amended Complaint that economic duress is a cause of action pursuant to a two-decade-old Seventh Circuit decision is wrong. *See* Pl.'s Am. Compl. ¶¶ 99. Tellingly, Carty does not cite an Indiana or North Carolina decision holding that economic duress is a viable, independent cause of action. Instead, he cites *Hamed v. General Acc. Ins. Co. of Am.*, 842 F.2d 170, 180 (7th Cir. 1988), in which the court states that "Punitive damages for breach of contract can be imposed where … the conduct in issue constitutes an independent tort (e.g., economic duress)" and cites an Indiana decision. The underlying Indiana decision, however, does not hold that economic duress is an independent cause of action. *See Vernon Fire & Casualty Insurance Co. v. Sharp*, 349 N.E.2d 173, 180 (Ind. 1976)). In fact, the underlying

**b.** **Carty Has Not Properly Alleged the Elements of a Defense of Economic Duress.**

Even if Carty's claim of "duress" could be used as a cause of action, Carty's claim must fail because Defendants committed no unlawful act. "Duress exists where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will." *Adder*, 288 N.C. at 490 (citations omitted). Duress can arise from the wrongful exertion of economic power, but "[n]ot every imbalance of economic power creates a situation of economic duress." *In re Maco Homes*, 1996 WL 511494, at *4. It exists only "when a party's wrongful action forces another to make a contractual promise, or else suffer irreparable injury to his business." *Id.*

Here, Defendants were acting within their contractual rights when they negotiated the Notice of Buyout and Release, Termination Agreement, and Promissory Notes. *See Adder*, 288 N.C. at 491 (enforcement of legal rights does not create economic duress for the opposing party); *In re Maco Homes*, 1996 WL 511494, at *4 (same). *See also MFP Eagle Highlands, LLC v. Am. Health Network of Indiana, LLC*, 2009 U.S. Dist. LEXIS 1915, *16-20 (S.D. Ind. Jan. 9, 2009) (defendant not liable for acting "completely within its contractual rights").

As discussed above, Defendants had the right to remove Carty from his role in the Companies pursuant to the agreements signed by the parties. (Pl's Compl, Ex. A at § 2.02; Ex. B at § 6.05). Defendants also had the right to repurchase Carty's interests in the Companies on the terms they provided to Carty. (Pl's Complaint, Ex. A at § 2.02; Pl's Complaint, Ex. B, § 9.03). Therefore, Carty's claim should be dismissed because Defendants mere act in availing

---

Indiana decision concludes that conduct analogous to economic duress "does not conveniently fit the confines of a pre-determined tort." *Id.*

themselves of their contractual rights cannot possibly be the basis for an affirmative claim for relief.[7]

### c. Carty Has Alleged Facts that Defeat His Claim for Economic Duress.

Even *if* economic duress was a recognized cause of action, and even *if* Carty pled each of the elements, Carty's economic duress claim must fail because the Complaint alleges facts that explicitly contradict and defeat the claim. In Paragraph 94, Carty reincorporates all previous allegations into his economic duress claim, including the paragraphs in which he alleges that contracts between the parties are enforceable. It is beyond credulity for Carty to simultaneously argue that his claim for breach of contract should proceed because the Promissory Notes are enforceable and that his claim of economic duress should proceed because the Promissory Notes were procured by fraud and are no longer enforceable.

### d. Carty's Cause of Action for Economic Duress Must Also Fail Because He Had an Adequate Remedy at Law.

Carty's economic duress claim must also fail because, instead of entering into the Notice of Buyout and Release, the Termination Agreement (for which he received $75,000) and the Promissory Notes (which entitled him to more than $750,000), Carty could have sued to enjoin Defendants from removing him from the Companies, and for the alleged breach of fiduciary duty and constructive fraud he asserts here. Where a party has an alternative to entering into a contract, the contract will not have been entered into as a result of economic duress. *See In re Maco Homes*, 1996 WL 511494, at *4; *Jones v. Jones*, 261 N.C. 612, 613 (1964) (quoting 17 C.J.S. Contracts § 172). Since Carty could have protected himself at the time the contracts were

---

[7]Further, it is well-settled that "breach or threat of breach of contract allegations, without more, are insufficient to establish duress." *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 487, 393 S.E.2d 580, 584 (N.C. Ct. App. 1990). Such a claim or defense cannot survive a motion on the pleadings. *Id.*

negotiated, they were not the result of economic duress and Carty's claim should therefore be dismissed.

**<u>CONCLUSION</u>**

As Carty's Amended Complaint demonstrates, upon termination of his interests in Westport Homes of North Carolina, Inc. and WPNC Development, LLC, Carty received exactly what he was entitled to receive under the Westport Shareholders Agreement and the WPNC Operating Agreement. Under the express terms of these Promissory Notes, the condition precedent to payment has not yet occurred and Carty's right to receive payment is still subordinated to the obligations owed to others. Thus, Carty's claims against Westport Homes of North Carolina, Inc. and WPNC Development, LLC must be dismissed.

This 3rd day of February, 2009.

s/ Neil T. Bloomfield
Gregory J. Murphy, N.C. State Bar No.16458
Neil T. Bloomfield, N.C. State Bar No. 37800
ATTORNEYS FOR DEFENDANTS

MOORE & VAN ALLEN, PLLC
100 North Tryon Street - Floor 47
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
gregmurphy@mvalaw.com
neilbloomfield@mvalaw.com

OF COUNSEL:

Michael T. McNally
George Gasper
Ice Miller LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0002
Telephone: (317) 236-2100

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2009, I caused the foregoing Defendants Westport Homes of North Carolina, Inc. and WPNC Development, LLC's Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint to be filed electronically with the Clerk of the Court through ECF, and that service will be accomplished by ECF sending a Notice of Electronic Filing to the following:

Stephen W. Kearney at dasha1521@bellsouth.net

s/ Neil T. Bloomfield_____
Neil T. Bloomfield