UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PAUL D. CARTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 3:08-cv-00507-MR-DCK |
| v. | ) |
| | ) |
| WESTPORT HOMES OF NORTH | ) |
| CAROLINA, INC., WPNC | ) |
| DEVELOPMENT, LLC, JOHN B. | ) |
| SCHEUMANN, STEVEN M. DUNN, and | ) |
| CHARLES D. SCHEUMANN, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS JOHN SCHEUMANN, STEVEN DUNN, AND CHARLES SCHEUMANN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants John Scheumann, Steven Dunn, and Charles Scheumann (collectively, the "Individual Defendants"), respectfully request that the Court dismiss the claims that have been asserted against them in Plaintiff's First Verified Amended Complaint. Neither Carty's amendments nor his original, conclusory allegations are sufficient to withstand the Individual Defendants' Motion to Dismiss. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).[1]

---

[1] To minimize duplication and to streamline matters for the Court, the Individual Defendants hereby incorporate by reference the Introduction, Statement of Facts and Argument contained in the Memorandum of Law In Support of the Motion to Dismiss being simultaneously filed by Defendants Westport Homes of North Carolina, Inc. and WPNC Development, LLC. As explained therein, Plaintiff's Amended Complaint fails to cure any of the issues that are fatal to the claims that have been asserted. Moreover, because Plaintiff's first two counts have not been asserted against the Individual Defendants, this Motion to Dismiss will address only counts three through eight.

## INTRODUCTION

As set forth in the Companies' motion to dismiss, Carty and the Individual Defendants established Westport Homes of North Carolina, Inc. ("Westport") and WPNC Development, LLC ("WPNC") (collectively, the "Companies") in September 2004. As expressly set forth in the Operating Agreement for WPNC (the "WPNC Operating Agreement," Pl.'s Am. Compl., Ex. B), any combination of members holding an eighty percent supermajority in WPNC had the right to terminate any member's interest in WPNC and repurchase those interests. Similarly, as expressly set forth in the Shareholders Agreement for Westport (the "Westport Shareholders Agreement,") (Pl.'s Am. Compl., Ex. A), the shareholders had the right to repurchase the shares of any individual that ceased to be a member of WPNC.

The terms under which the membership interest in WPNC and the shares in Westport are to be repurchased also are expressly set forth in the WPNC Operating Agreement and the Westport Shareholders Agreement. These agreements explicitly state that the Companies had the option of paying twenty percent of the value of the membership interests and shares in cash, and eighty percent of the purchase price with a promissory note that would make payment "subordinated to all debts and liabilities that are owed by the [Companies] to a third party." (Pl.'s Am. Compl., Ex. A; Westport Shareholders Agreement, § 3.03, Ex. B; WPNC Operating Agreement, § 9.09).

Upon the termination of Carty's association with WPNC and Westport, the Companies paid Carty twenty percent of the value of his interests in WPNC and his shares in Westport and provided Carty with Promissory Notes for the balance – all as expressly set forth in the WPNC Operating Agreement and the Westport Shareholders Agreement. As the parties had agreed in 2004 when the Companies were created, the Promissory Notes were subordinated to the prior debts owed by Westport and WPNC.

Although Carty has asserted a number of legal theories in his Amended Complaint, his allegations boil down to one issue – Carty's frustration that the condition precedent to payment of the Promissory Notes has not yet occurred and his debts are still subordinated to the obligations Westport and WPNC owe to others. Carty's lawsuit is a thinly-veiled effort to obtain an even better return on his investment than he has negotiated and received. His frustration with the deal he bargained for and his desire for a better one, however, does not amount to a claim upon which relief may be granted – and it does not give rise to personal jurisdiction over the Individual Defendants. His claims, therefore, must be dismissed.

## **STANDARD OF REVIEW**

The plaintiff has the burden of establishing personal jurisdiction over a defendant. *See*, *e.g.*, *Uniprop Manufactured Housing Communities Income Fund II v. Home Owners Funding Corp. of America*, 753 F.Supp. 1315, 1318-19 (W.D.N.C. 1990). The plaintiff must establish personal jurisdiction by a preponderance of the evidence. *See*, *e.g.*, *WLC, LLC v. Watkins*, 454 F. Supp.2d 426, 431 (M.D.N.C. 2006). While a plaintiff receives the benefit of all reasonable inferences in his favor, the Court is not required to rely solely on the Plaintiff's allegations. *Id.*

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court has recently instructed, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint" do not support the legal conclusion). A plaintiff must instead plead "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atl. Corp.*,

127 S. Ct. at 1974. Where, as here, Carty has failed to provide sufficient facts demonstrating that relief is plausible, dismissal is appropriate. *Giarratano*, 521 F.3d at 304.

When ruling on a motion to dismiss, the Court may consider documents that are the subject of a complaint and specifically referred to by that complaint. *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). A plaintiff's complaint may be dismissed if shown to be invalid by the documents upon which it is based. *Standard Life & Accident Ins. Co. v. Dewberry & Davis, LLC,* 210 Fed. Appx. 330, 332-33 (4th Cir. 2006) (affirming dismissal of breach of contract claim where exhibits attached to complaint belied any legal claims therein).

Carty's Complaint against the Individual Defendants fails to assert any claim upon which relief can be granted, and should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

Contrary to Carty's sweeping claim that the Individual Defendants are "subject to the personal jurisdiction of this Court," (Pl.'s Am. Compl., ¶¶ 4-6), the Westport Shareholders Agreement, the WPNC Operating Agreement, the Termination Agreement, and the Promissory Notes each states that the agreement is governed by Indiana law. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 6.12; Ex. B, WPNC Operating Agreement, § 13.01; Ex. J., Termination Agreement, § 8; Exs. K and L, Promissory Notes, p. 4, Governing Law).

Further, Defendant John Scheumann does not, and never has, owned any real property in North Carolina. (Affidavit of John Scheumann, ¶ 4, filed on 12/11/08). Nor has he owned any personal property titled in North Carolina. (Affidavit of J. Scheumann, ¶ 5). John Scheumann, moreover, has only visited North Carolina two or three times in the last three years and at least one of those was in his professional capacity. (Affidavit of J. Scheumann, ¶ 7). The other was

simply to visit his daughter. (Affidavit of J. Scheumann, ¶ 7). John Scheumann's only connection with North Carolina has been his ownership interests in a handful of out-of-state companies that do business in the State. (Affidavit of J. Scheumann, ¶ 6). Indeed, John Scheumann has affirmed that all of his dealings with Carty involving the Promissory Notes at issue occurred in his professional capacity as an employee of Westport. (Affidavit of J. Scheumann, ¶ 8).

Like John Scheumann, Defendants Steve Dunn and Charles Scheumann have never owned any personal property titled in North Carolina. (Affidavit of Steve Dunn, ¶ 6, filed on 12/11/08; Affidavit of Charles Scheumann, ¶ 6, filed on 12/11/08). Nor have they ever lived in the State. (Affidavit of S. Dunn, ¶ 3; Affidavit of C. Scheumann, ¶ 2). Indeed, they have only visited the State when necessary in connection with their roles as officers and employees of Westport. (Affidavit of S. Dunn, ¶ 4; Affidavit of C. Scheumann, ¶ 4). In addition, they have never owned any real property in North Carolina in their personal capacities or their personal use. (Affidavit of S. Dunn, ¶ 5; Affidavit of C. Scheumann, ¶ 5). Although they hold some parcels of land as trustees, such holdings are solely in their professional capacity as employees of Westport. (Affidavit of S. Dunn, ¶ 5; Affidavit of C. Scheumann, ¶ 5). They held such parcels on behalf of and for the sole benefit of the Companies. (Affidavit of S. Dunn, ¶ 5; Affidavit of C. Scheumann, ¶ 5). Further, they have affirmed that all of their dealings with Carty involving the Promissory Notes at issue occurred in their professional capacity as employees of Westport. (Affidavit of S. Dunn, ¶ 7; Affidavit of C. Scheumann, ¶ 7).

# ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

To establish jurisdiction over the Individual Defendants, Carty must establish that North Carolina's long-arm statute authorizes such jurisdiction and that such jurisdiction does not infringe upon the Individual Defendants' right to due process. *Tejal Vyas, LLC v. Carriage Park Ltd. P'ship*, 600 S.E.2d 881, 884-85 (N.C. App. Ct. 2004) (internal citations and quotations omitted), *aff'd*, 608 S.E.2d 751 (N.C. 2005). Carty appears to allege that personal jurisdiction exists either because the Individual Defendants contracted with Carty to perform services in North Carolina and/or because the Individual Defendants have engaged in substantial activity within North Carolina. (*Compare* Pl.'s Am. Compl., ¶¶ 4-6 *with* N.C.G.S. §§ 1-75.4(1)(d) and 1-75.4(5)(a)). Carty, however, fails to allege any facts supporting these conclusory allegations.

### A. The Individual Defendants Have Not Contracted With Carty to Perform Services in North Carolina.

In his Amended Complaint, Carty makes the new allegation that the Individual Defendants "entered into contracts with [him] and others which were to be performed in this State." (Pl.'s Am. Compl., ¶¶ 4-6). While this new allegation likely was inserted in an attempt to establish personal jurisdiction, *see* N.C.G.S. § 1-75.4(5)(a), it simply is insufficient. It is well-established that contracts with an LLC (even one contemplating that Plaintiff will perform services within North Carolina) are not considered to be contracts with the individual members of the LLC for purposes of establishing personal jurisdiction. *See Mountain Funding, LLC v. Blackwater Crossing, LLC*, 2006 U.S. Dist. LEXIS 96763 at *4-6 (W.D.N.C. June 5, 2006) (holding that personal jurisdiction did not exist over LLC members based on Plaintiff's contracts with the LLC). Like the Plaintiff in *Mountain Founding*, Carty does not allege (nor can he) that the Individual Defendants entered into any contracts commanding him to perform services, let

6

alone to provide services within North Carolina. *See* N.C.G.S. § 1-75.4(5)(a). That Carty and the Companies allegedly entered into contracts is irrelevant to the issue of personal jurisdiction over the Individual Defendants. Nonetheless, even if a company's contracts were relevant to the personal jurisdiction analysis regarding the company's shareholders or members, none of the contracts attached to Carty's Amended Complaint require him to perform any service – let alone to do so within North Carolina – and they are all are governed by Indiana law. (Pl.'s Am. Compl., Exs. A-L).

### B. The Individual Defendants Have Not Personally Engaged in Substantial Activity Within North Carolina.

Carty has failed to allege any facts demonstrating that the Individual Defendants have engaged in substantial activity within North Carolina to satisfy the applicable long-arm statute, *see* N.C.G.S. § 1-75.4(1)(d), or that the Individual Defendants maintained "certain minimum contacts with [North Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Washington, Office of Unemployment Comp.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "To generate minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state and invoked the benefits and protections of the laws of North Carolina. The relationship between the defendant and the forum state must be such that the defendant should reasonably anticipate being haled into a North Carolina court." *Tejal Vyas, LLC v. Carriage Park Ltd. P'ship*, 600 S.E.2d 881, 885-86 (N.C. App. Ct. 2004) (internal citations and quotations omitted), *aff'd*, 608 S.E.2d 751 (N.C. 2005).

"[P]ersonal jurisdiction over an individual officer or employee of a corporation may not be predicated merely upon the corporate contacts with the forum." *Robbins v. Ingham*, 635 S.E.2d 610, 615 (N.C. App. Ct. 2006) (internal citations omitted*), rev. denied*, 642 S.E.2d 448

(N.C. 2007). Corporate officers are subject to personal jurisdiction only when "in addition to their roles as officers, [they] complete[] an act in *their individual capacities* . . . ." *Id.* (emphasis added). Similarly, "[p]ersonal jurisdiction over a limited liability company does not automatically extend to its members." *Mountain Funding, LLC v. Blackwater Crossing, LLC*, , Case No. 05-cv-513, 2006 U.S. Dist. LEXIS 96763 at *7 (W.D.N.C. June 5, 2006). Rather, "the members must have the requisite minimum contacts with the forum state independently of the limited liability company." *Id.*

Where, as here, the plaintiff fails to allege any conduct by the defendants in their individual capacities that establishes contacts with North Carolina, the court must dismiss such defendants. *See Saft Am., Inc. v. Plainview Batteries, Inc.*, 659 S.E.2d 39, (N.C. App. Ct. 2008) ("Here, plaintiff wholly failed to allege any act [defendant] committed occurred within his individual capacity to subject him to personal jurisdiction. The trial court erred by denying [defendant]'s motion to dismiss."); *Rauch v. Urgent Care Pharm., Inc.*, 632 S.E.2d 211, 217-18 (N.C. App. Ct. 2006) (insufficient contacts where defendant did not own any real or personal property in North Carolina, had not lived in North Carolina since he was eighteen years old and he had not recently visited the state for personal reasons); *Robbins v. Ingham*, 635 S.E.2d 610, 616 (N.C. App. Ct. 2006) ("[W]e believe the facts of this case do not show [defendant] acting in his individual capacity to a point where North Carolina has personal jurisdiction over [him]."), *rev. denied*, 642 S.E.2d 448 (2007).

In that regard, Defendant John Scheumann does not, and never has, owned any real property in North Carolina. Nor has he owned any personal property titled in North Carolina. John Scheumann, moreover, has only visited North Carolina two or three times in the last three years and at least one of those was in his professional capacity as an employee of Westport. The

other was simply to visit his daughter. John Scheumann's only connection with North Carolina has been his ownership interests in a handful of out-of-state companies that do business in the State. His work with such companies constitutes conduct in his professional capacity that is irrelevant to the Court's personal jurisdiction analysis of him individually. Indeed, John Scheumann has affirmed that all of his dealings with Carty involving the Promissory Notes at issue occurred in his professional capacity as an employee of Westport. He, therefore, should be dismissed from this case.

Like John Scheumann, Defendants Steve Dunn and Charles Scheumann, have never owned any personal property titled in North Carolina. Nor have they ever lived in the State. Indeed, they have only visited the State when necessary in connection with their roles as officers and employees of Westport. In addition, they have never owned any real property in North Carolina in their personal capacities for their personal use. Although they hold some parcels of land as trustees, such holdings are solely in their professional capacity as employees of Westport. They held such parcels on behalf of and solely for the benefit of the Companies. Steve Dunn and Charles Scheumann also have affirmed that all of their dealings with Carty involving the Promissory Notes at issue occurred in their professional capacity as employees of Westport. They, therefore, should also be dismissed from this case.

II. **CARTY'S BREACH OF FIDUCIARY DUTY CLAIM (COUNT V) SHOULD BE DISMISSED BECAUSE THE INDIVIDUAL DEFENDANTS ACTED PURSUANT TO THE RIGHTS AND OBLIGATIONS SET FORTH IN THE WESTPORT SHAREHOLDERS AGREEMENT AND THE WPNC OPERATING AGREEMENT.**

Carty alleges that the Individual Defendants owed him a duty of loyalty and that they breached that duty by voting to remove him as manager of WPNC, and as a result, to have the Companies purchase his ownership shares. In his Amended Complaint, Carty adds the new allegation that the Individual Defendants "coerced" him into executing documents with terms

9

that were unfavorable to him. Carty's claim should be dismissed, however, because none of his allegations suggest (and there is no allegation) that the Individual Defendants have done anything other than that which the Westport Shareholders Agreement and the WPNC Operating Agreement (and, for that matter, Carty) explicitly authorized them to do.

Generally, under Indiana law, owners of closely held companies owe each other a fiduciary duty. *Credentials Plus, LLC v. Calderone*, 230 F. Supp. 2d 890, 899-900 (N.D. Ind. 2002); *Purcell v. S. Hills Invs., LLC*, 847 N.E.2d 991, 996-97 (Ind. Ct. App. 2006). Such duties, however, do "not necessarily extend beyond matters that do not affect the general well-being of the corporation." *Eperly v. Johnson*, 734 N.E.2d 1066, 1076 (Ind. Ct. App. 2000) (internal quotations omitted). These duties, moreover, do not prohibit owners from taking actions explicitly authorized by their shareholders and operating agreements. *See, e.g.*, *Regan v. Natural Res. Group, Inc.*, 345 F. Supp. 2d 1000, 1011-13 (D. Minn. 2004) (holding that a shareholder in closely held corporation does not have a breach of fiduciary duty claim for being terminated where shareholders' agreement explicitly stated he could be terminated without cause).

Here, the WPNC Operating Agreement explicitly authorizes members holding at least an eighty percent supermajority to remove the manager "with or without cause." (Pl.'s Am. Compl., Ex. B, WPNC Operating Agreement, § 6.05). Similarly, both the WPNC Operating Agreement and the Westport Shareholders Agreement explicitly authorize the Companies to purchase the ownership shares of an individual who no longer is employed by either WPNC or Westport. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 2.02; Ex. B, WPNC Operating Agreement, § 9.03). Carty agreed to this provision (which applies equally to any owner) when he executed these agreements. The WPNC Operating Agreement and the Westport Shareholders Agreement, moreover, contain provisions dictating the purchase price and the

terms of payment associated with any such buy-out. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 3.02-3.03; Ex. B, WPNC Operating Agreement, § 9.08-9.09). Carty agreed to these provisions (which apply equally to the Individual Defendants and Carty) when he executed the WPNC Operating Agreement and the Westport Shareholder Agreement.

The Individual Defendants acted consistent with their obligations when they voted to purchase Carty's shares pursuant to purchase price and payments terms that were dictated by the contracts to which Carty had previously agreed. Because the Individual Defendants have acted consistent with their contractual obligations to the Companies and each other, they could not have breached any fiduciary duty owed to Carty. *See MFP Eagle Highlands, LLC v. Am. Health Network of Indiana, LLC*, Case No. 07-424, 2009 U.S. Dist. LEXIS 1915, at *16-20 (S.D. Ind. Jan. 9, 2009) (holding that defendant did not "violat[e] other legal duties" by acting "completely within its contractual rights" and that defendant could not have sought to defraud plaintiff by "merely exercising its legal rights under the contract."). Carty's claim (alleging not that the Individual Defendants breached their fiduciary duty by breaching the Operating and Shareholders Agreements, but by *complying* with them) is without merit. For the foregoing reasons, Count V should be dismissed.

### III. CARTY'S CONSTRUCTIVE FRAUD CLAIM (COUNT IV) SHOULD BE DISMISSED BECAUSE THE INDIVIDUAL DEFENDANTS SIMPLY ENFORCED THEIR CONTRACTUAL RIGHTS.

In Count IV, Carty asserts a claim labeled "Constructive Fraud." Based upon the allegations asserted within Count IV, however, it is impossible to decipher what claim Carty intends to assert. In fact, Count IV contains some of the elements of (1) fraud; (2) fraud by omission; and (3) constructive fraud. No matter which of these claims Carty intends to assert, Count IV should be dismissed because Carty has suffered no damages and Carty did not rely on any material misrepresentation allegedly made by any of the Defendants.

## A. Carty Failed to Allege Fraud with Particularity.

As a threshold matter, Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The "circumstances" are the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotations omitted); *see also Breeden v. Richmond Community College*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (Rule 9(b) standard applied to fraud by omission). North Carolina law also holds that "mere generalities and conclusory allegations of fraud will not suffice to sustain a fraud claim." *Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir. 1994) (internal quotation omitted). Carty's Amended Complaint does not meet the particularity requirements with regard to fraud or fraud by omission. Rather, Carty makes mere conclusory allegations that "Defendants made material misrepresentations regarding the Subordination Clause of each note and regarding the intent and ability of Defendant Westport and Defendant WPNC to honor the payments [*sic*] terms of the Westport Promissory Note and the WPNC Promissory Note; they remained silent regarding their collective intentions when they had a fiduciary duty to act in good faith and to deal fairly with Plaintiff . . . ." (Pl.'s Am. Compl., ¶ 68). Carty fails to allege with *any* particularity the who, what, where and when of his claim(s). For this reason alone, Carty's fraud claim(s) should be dismissed.

In addition, Carty has not, and cannot, allege any facts to support his claim that he suffered damages as a result of Defendants alleged "fraud." In fact, Carty has received everything that he was entitled to receive pursuant to the agreements between the parties. As alleged in the Complaint, on December 21, 2006, Carty was formally notified that his ownership interests in Westport and WPNC were going to be terminated. (Pl.'s Am. Compl., ¶ 23, and Ex.

12

I). Pursuant to the Westport Shareholders Agreement and the WPNC Operating Agreement, the Individual Defendants were expressly entitled to terminate Carty's ownership interests in the Companies. (Pl.'s Am. Compl., Ex. A, Westport Shareholders Agreement, § 2.02; Ex. B, WPNC Operating Agreement, § 6.05). The terms of the buyout were defined by the Westport Shareholders Agreement, Section 3.02, and the WPNC Operating Agreement, Section 9.08, and expressly accepted by Carty. Importantly, Carty makes no allegation that Defendants committed any act of fraud or breach of their purported duties with regard to the adoption of the Westport Shareholders Agreement and the WPNC Operating Agreement.

### B. Carty Failed to Allege the Elements of Constructive Fraud.

Pursuant to the parties' agreements, Westport and WPNC each issued Carty a Promissory Note. Under the terms of those Notes, Westport and WPNC are still obligated to pay Carty. This is precisely the agreement reached in 2004, when the Companies were established. No representation made by the Individual Defendants in 2006 could have been material to the execution of these agreements because Carty was contractually obligated to accept the Promissory Notes in the event his interests were repurchased, pursuant to the Westport Shareholders Agreement and the WPNC Operating Agreement which were executed in September, 2004.

To establish a claim for constructive fraud a plaintiff must show "(i) a duty owing by the party accused of the misconduct to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or by remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party accused of the misconduct at the expense of the complaining party." *In re Scahill*, 767 N.E.2d 976, 979 (Ind. 2002). *See Keener Lumber Co. v. Perry*, 560 S.E.2d 817, 823 (N.C.

Ct. App. 2002) (holding that a plaintiff must establish at a minimum "(1) the existence of a fiduciary duty, and (2) a breach of that duty").

As previously set forth in Section II, Carty cannot establish a breach of a fiduciary duty because the Individual Defendants were simply carrying out their explicit rights under the Westport Shareholders Agreement and the WPNC Operating Agreement. Further, while the Individual Defendants deny that any misrepresentations were made (material or otherwise), the Court need not address that issue at this time because the Westport Shareholders Agreement and WPNC Operating Agreement expressly provide the procedure for repurchasing Carty's interests in the Companies, which procedure Carty admits was followed here. Therefore, Carty cannot establish materiality or reliance as a matter of law.

For a representation to be material, the representation must pertain to something that, if known, would have affected the decision of the plaintiff to enter the agreement. *See*, *e.g.*, *White Sewing Machine Co. v. Bullock*, 76 S.E.2d 634 (N.C. 1912). In other words, "[f]raud is material to a contract when the latter would not have been made if the fraud had not been committed." *Id.* (internal quotation omitted). To establish reliance, a plaintiff must demonstrate that he acted or refrained from acting in a certain manner because of the defendant's alleged misrepresentations. *See*, *e.g.*, *Wilson v. Dryvit Systems, Inc.*, 206 F.Supp.2d 749, 756 (E.D. N.C. 2002) (citing *Pleasant Valley Promenade v. Lechmere, Inc.*, 464 S.E.2d 47, 57 (N.C. Ct. App. 1995)); *Plymal v. Upright*, 419 N.E.2d 756, 761 n. 3 (Ind. Ct. App. 1981) (quoting 37 C.J.S. Fraud § 29, pp. 270-271) (holding that "to secure redress for false representations complainant must show that he would not have acted but for such representation"). "There can be no recovery in fraud for a deception by which a person is induced to do something he is already bound to do." *Shortridge v. Platis*, 458 N.E.2d 301, 304 (Ind. Ct. App. 1984).

Here, Carty cannot establish *any* reliance as a matter of law because there are no facts showing that he acted or refrained from acting in any way based on the Defendants' alleged misrepresentations. Carty simply accepted the deal that had been reached in 2004. Westport and WPNC had the express right to repurchase Carty's interests by paying him twenty percent in cash and the balance in the form of promissory notes that were subordinated to the Companies' prior financial obligations. (Plf.'s Amended Compl., Ex. A, Westport Shareholders Agreement, § 3.03; Ex. B, WPNC Operating Agreement, § 9.09). That is precisely what occurred on January 2, 2007. (Pl.'s Am. Compl., Exs. K-L).

Carty, moreover, has received everything he bargained for and has lost nothing. Even though the condition precedent for payment on the Notes has not yet occurred, Carty still has the right to receive payment pursuant to those Notes, and he still is receiving thousands of dollars in quarterly interest payments. Thus, Carty has suffered no damages and has nothing to recover by way of his purported "fraud" claim(s). In the same respect, the actions taken by the Defendants with regard to the Termination Agreement and Promissory Notes were expressly permitted by the Westport Shareholder Agreement and the WPNC Operating Agreement and, accordingly, cannot form the basis of Carty's claim.

As a result, Carty's constructive fraud claim should be dismissed because it is not pled with particularity and even if this was remedied, Carty's claim must fail because the Individual Defendants simply entered into an agreement with Carty in 2006 that he was contractually obligated to accept since 2004.

## IV. CARTY'S TORTIOUS INTERFERENCE CLAIM (COUNT VII) SHOULD BE DISMISSED BECAUSE THE INDIVIDUAL DEFENDANTS, WHO CANNOT BE HELD LIABLE WHEN ACTING IN THEIR PROFESSIONAL CAPACITY, WERE JUSTIFIED IN THEIR CONDUCT.

Under both North Carolina and Indiana law, Carty's tortious interference claim requires him to allege (and ultimately prove) that (a) an enforceable contract exists; (b) the Individual Defendants knew of such contract; (c) the Individual Defendants intentionally induced a breach of that contract; (d) that there was no justification for the Individual Defendants' conduct; and (e) Carty suffered damages as a result. *See Beck v. City of Durham*, 154 N.C. App. 221, 232 (N.C. Ct. App. 2002) (citing *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661 (N.C. 1988)); *National City Bank v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997).

### A. Carty's Claim Should Be Dismissed Because the Companies Did Not Breach Any Contract with Carty.

Carty's claim should be dismissed because the Companies did not breach any contract with Carty. Breach of contract is an essential element of a tortious interference claim under Indiana law. Here, the Companies have met all of their obligations imposed by the Promissory Notes, which are the only contracts alleged to have been breached or interfered with by the Defendants. (Companies' Mem. of Law, pp. 8-11). As a result, Carty's tortious interference claim should be dismissed.

### B. Carty's Claims Should Be Dismissed Because the Individual Defendants Are Not Outsiders to Carty's Contracts with the Companies.

Officers and directors of a company generally cannot be held liable for tortiously interfering with their company's contract when acting in their professional capacity. *See Wilson v. McClenny*, 262 N.C. 121, 132-33 (N.C. 1964); *see also Trail v. Boys & Girls Clubs*, 845 N.E.2d 130, 138-39 (Ind. 2006). The Indiana Supreme Court recently explained that:

> In the case of a corporation, the legal entity acts through its directors and officers. Thus, when officers or directors act in their official capacity as agents of the corporation, they act not as individuals but as the corporation itself. In doing so, they are not acting as a third party, but rather as a party to the contract and cannot be personally liable for tortious interference with the contract . . . . [T]o state a claim against the officers and directors of a corporation, [the plaintiff] must not only allege the basic elements of tortious interference and those special elements related to employees at will, he must also allege some interfering act by officers or directors that rests outside their authority as agents of the corporation.

*Trail*, 845 N.E.2d at 138-39; *see also Kiyose v. Trustees of Indiana University*, 333 N.E.2d 886, 891 (Ind. Ct. App. 1975) ("Plaintiff's amended complaint alleges only the commission of acts lying within the scope of defendants' duties; therefore, it failed to allege tortious conduct."). Here, Carty has utterly failed to plead any facts showing a lack of legal justification or malice by the Individual Defendants. *See Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 524 (N.C. Ct. App. 2003).

Carty has failed to allege that any of the Individual Defendants were acting in a personal capacity when the alleged interference occurred, and as a result, Carty's claim should be dismissed.

### C. Carty's Claim Should Be Dismissed Because the Complaint Provides Justification for the Individual Defendants' Actions.

Carty's Amended Complaint also fails to demonstrate that the Individual Defendants acted without justification. A complaint must indicate that there is "no motive for interference other than malice." *Filmar Racing, Inc. v. Stewart,* 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001). Carty's Amended Complaint must go beyond a mere assertion that the Individual Defendants' conduct was unjustified, and set forth factual allegations from which it can reasonably be inferred that the Individual Defendants' conduct was unjustified. *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (noting that to be

unjustified the act must be malicious and "unmixed with any other [purpose] and exclusively directed to injury and damage of another") (citation omitted). A defendant lawfully may interfere with a contract if he does so for a reason reasonably related to a legitimate business interest. *Filmar*, 141 N.C. App. at 674. In this case, there was no malice.

Both the Westport Shareholders Agreement and the WPNC Operating Agreement expressly provide the Companies with the right to purchase an individual owner's shares pursuant to a promissory note subordinating the debt to all other Company liabilities. The Individual Defendants had absolutely no authority or obligation to compel the Companies to issue Carty a promissory note that was *not* subordinate to the Companies' other debt. Doing so, would clearly violate the terms of the Companies' founding (and other) documents. Thus, the Individual Defendants cannot be liable for tortiously interfering with Carty's contracts (which have *not* even been breached in the first place) because Carty has failed to plead how any acts by the Individual Defendants were "unjustified." For the foregoing reasons, Count VII should be dismissed.

V. **CARTY'S REMAINING CLAIMS, UNJUST ENRICHMENT (COUNT III), UNFAIR AND DECEPTIVE TRADE PRACTICES CLAIM (COUNT VI), AND ECONOMIC DURESS CLAIM (COUNT VIII), SHOULD ALSO BE DISMISSED FOR THE REASONS SET FORTH IN THE COMPANIES' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS.**

Carty's remaining claims against the Individual Defendants, namely his claims for Unjust Enrichment (Count III), Unfair and Deceptive Trade Practices (Count VI) and Economic Duress (Count VIII), should be dismissed for the reasons fully set forth in the Memorandum of Law In Support of the Motion to Dismiss being simultaneously filed by Defendants Westport Homes of North Carolina, Inc.

## CONCLUSION

As Carty's Amended Complaint demonstrates, upon termination of his interests in Westport Homes of North Carolina, Inc. and WPNC Development, LLC, Carty received exactly what he was entitled to receive under the Westport Shareholders Agreement and the WPNC Operating Agreement; namely a cash payment for twenty percent of the value of his interests and two subordinated Promissory Notes. These Promissory Notes were not procured by fraud or misrepresentation or the breach of any fiduciary duty, but rather, the Promissory Notes were issued pursuant to the parties' 2004 agreements. Further, under the express terms of these Promissory Notes, the condition precedent to payment has not yet occurred, and Carty's right to receive payment is still subordinated to the obligations owed by the Companies to others. Thus, Carty's claims against John Scheumann, Steven Dunn, and Charles Scheumann must be dismissed.

This 3rd day of February, 2009.

s/ Neil T. Bloomfield
Gregory J. Murphy, N.C. State Bar No.16458
Neil T. Bloomfield, N.C. State Bar No. 37800
ATTORNEYS FOR DEFENDANTS

MOORE & VAN ALLEN, PLLC
100 North Tryon Street - Floor 47
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
gregmurphy@mvalaw.com
neilbloomfield@mvalaw.com

OF COUNSEL:

Michael T. McNally
George Gasper
Ice Miller LLP
One American Squire, Suite 2900
Indianapolis, IN 46282-0002
Telephone: (317) 236-2100

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2009, I caused the foregoing Defendants John Scheumann, Steven Dunn, and Charles Scheumann's Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint to be filed electronically with the Clerk of the Court through ECF, and that service will be accomplished by ECF sending a Notice of Electronic Filing to the following:

Stephen W. Kearney at dasha1521@bellsouth.net


s/ Neil T. Bloomfield_____
Neil T. Bloomfield